[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Eugene Boland applied for a prejudgment remedy against the defendant Gunther International, Inc. ("Gunther") in the amount of $300,000., contending that there is probable cause that judgment in that amount or in a higher amount will be rendered in this action in favor of the plaintiff. The plaintiff's claim arises out of his employment by Gunther from late May 1993 until December 1993.
General Statutes § 52-278d(a)(1), as amended by P.A. 93-431, requires the court to determine at a prejudgment remedy hearing whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in a higher amount, will be rendered in the suit in favor of the plaintiff. The 1993 amendment to the statute, which took effect January 1, 1994, raised the burden of proof which the plaintiff must meet in order to obtain a prejudgment remedy order. The earlier version of the statute required only that there be probable cause to sustain the validity of the plaintiff's claim.
In May 1993, Gunther was a privately held corporation located in Norwich and engaged in the business of manufacturing and selling large, customized mail processing machines. The company was experiencing financial distress, as it had in the past, resulting from a chronic lack of sales. The plaintiff responded to Gunther's advertisement to hire a technical sales representative. He was interviewed first by Gunther's consultant in human resources and then by the company's chief executive officer, Jon Freeman, the company's chief financial officer, Michael Vehlies, and later by the company's president, William Gunther, III, all of these interviews occurring in Norwich. The plaintiff also went to Manhattan to be interviewed CT Page 2115 by Harold Geneen, Gunther's principal financial backer.
The plaintiff had substantial experience in sales and marketing. After concluding all the interviews, Gunther hired the plaintiff not as a sales representative, but as its director of sales and marketing. During the interview process, Freeman, Geneen and the others discussed with Boland the company's need for additional sales personnel, a sales plan or program and more discipline to exact a greater effort from the current sales force. The plaintiff began work in his new position in late May and worked throughout the summer in efforts which he felt would increase the company's sales. In August, he placed one of Gunther's senior sales representatives, Edward Preusser, on probation. In late September the plaintiff decided to terminate the employment of a second senior sales representative, James Grover, despite the fact that this employee had never been placed on probation. An otherwise confidential memorandum stating Boland's intention to terminate this employee was somehow obtained by the employee, who showed it to Freeman, to whom Boland was then reporting. Boland, however, not knowing that Grover had obtained the memo, filed a second memo with Freeman, which retracted the decision to terminate Grover.
On September 30, 1993, Freeman relieved the plaintiff of his management responsibilities and assigned him to a position in the field, without any change in the plaintiff's compensation. Freeman disagreed with Boland's decisions concerning the company's two senior sales representatives and also held Boland responsible for the inadvertent lapse which led to the disclosure of the confidential memorandum. The plaintiff protested the change in his responsibilities, but promptly got to work on his new assignment, where he performed quite well. In November, as Gunther was about to hold an initial public offering of its stock, the plaintiff's attorney sent a draft complaint against the company to Gunther's securities' counsel and to Geneen, advising that suit would be filed if the matter was not resolved. On November 30, Freeman terminated the plaintiff's employment with Gunther, effective December 3, for disloyalty to the company by threatening its existence at the critical time of the public offering.
In his proposed, unsigned complaint, the plaintiff alleged that he was told by both Geneen and Freeman during the interview process in May 1993 that as director of sales he would have "full authority" over all the sales representatives, including CT Page 2116 the right on his own authority to demote, transfer or terminate any sales personnel as he felt necessary. At the prejudgment remedy hearing, Boland's testimony supported these allegations. He also testified that he would not have taken the job without these assurances.
These allegations by the plaintiff form the basis for each of the remaining four counts of his proposed complaint. (The first count, for wrongful discharge, was withdrawn at he conclusion of the prejudgment remedy hearing.) The second count is based on the alleged breach of the defendant's agreement to give plaintiff full authority over the sales representatives. The third count alleges that the representations allegedly made by Geneen and Freeman created an implied contract between plaintiff and defendant which was breached. The fourth count alleges that these promises were made with the intent that plaintiff rely on them and that he did in fact reasonably rely on them. The fourth count, for negligent misrepresentation, alleges that these representations were false when made and that plaintiff justifiably relied on them.
The plaintiff's testimony that these statements were made was disputed by the testimony of Freeman and Vehlies. Vehlies, to whom Boland reported in May, June and July, testified that the plaintiff did not have the authority to hire or fire sales representatives without the concurrence of a company officer. Freeman testified that he did not tell the plaintiff that he would have "full authority" over the sales representatives. Freeman pointed out that at he time he interviewed Boland in May he was interviewing him as a sales representative, which was the advertised position, and they did not discuss any authority which the plaintiff might have as director of sales and marketing. It was only after the plaintiff had been interviewed separately by Freeman, Vehlies and William Gunther, III, that it occurred to them to consider hiring him as a sales manager. Moreover, Freeman testified, the company was in a tenuous position financially in May. The officers were unable and unwilling to give broad responsibility over the company's sales, the company's most critical area, to anyone, especially someone with whom they had just briefly become acquainted.
Freeman's testimony on these points and others was persuasive and highly credible. The court found the plaintiff's testimony significantly less credible. He contradicted himself at times during his testimony. He also appeared to be less than CT Page 2117 forthcoming at times in his testimony. For example, the plaintiff's testimony about the two different versions of his memorandum concerning his intent to terminate James Grover seemed to the court to be incomplete and implausible. In addition, several different witnesses gave testimony which conflicted with the plaintiff's testimony on a number of key points.
The plaintiff's application for prejudgment remedy is denied after hearing. The plaintiff failed to establish probable cause that a judgment will be rendered in his favor in this matter in that he failed to establish by credible evidence that Freeman and Geneen represented to him that he would have "full authority" over the company's sales representatives.
/s/ Vertefeuille, J. VERTEFEUILLE